E-FILED
Friday, 29 July, 2016  10:26:12 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BRENDA VANN,
    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
    Defendant.

Case No. 4:15-cv-04051-JEH

**Order and Opinion**

**I**

In April 2012, Plaintiff, Brenda Vann ("Vann") applied for disability insurance benefits ("DIB"), alleging a disability onset date of October 5, 2011 (Tr. 169-78). The state agency denied her application initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 132-33). In December 2013, Plaintiff, who was represented by an attorney, testified at a hearing before an ALJ, as did an impartial vocational expert (Tr. 43-95). One month later, the ALJ issued a decision finding Plaintiff not disabled (Tr. 17-32). The ALJ's decision became final and appealable in March 2015, when the Appeals Council denied Plaintiff's request for review (Tr. 1-4). *See* 20 C.F.R. §§ 404.955, 404.981. In this Court, Plaintiff seeks judicial review of the Defendant-Commissioner's decision.

For the reasons stated, *infra*, the Plaintiff's Motion for Summary Judgment [#14] is GRANTED and the Defendant's Motion for Summary Affirmance is DENIED [#17], and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to, consistent with this Order and Opinion, reconsider Step 2 and the Steps which follow it.

**II**

Vann sought DIB based upon a number of alleged severe impairments, both physical and mental. Regarding physical impairments, the ALJ found at Step 2 of the sequential process the following impairments to be both "severe" and to meet the duration requirement of the Social Security regulations: fibromyalgia, diabetes mellitus with neuropathy, obstructive sleep apnea, headaches with microvascular ischemic disease and obesity (20 C.F.R. §404.1520(c)). Vann takes no issue with these findings. Rather, she takes issue with the ALJ's finding that she neither had any severe mental impairments nor did her mental impairments, whether severe or not, meet the duration requirement in the regulations.

Regarding Vann's mental impairments, she first began seeing Victoria Todd, LCPC, in May of 2013. At their first meeting, Todd noted that Vann suffered from symptoms of hypersomnia, low energy, fatigue, low self esteem, problems with making decisions due to poor concentration, hopelessness and uselessness. Todd found that Vann met the criteria for a diagnosis of post-traumatic stress disorder (PTSD) and dysthymic disorder/neurotic depression, along with other physical impairments not at issue. (Tr. 598). Supporting these diagnoses, Todd noted that Vann was sexually assaulted by her father between the ages of eleven to sixteen and was physically and emotionally abused by her mother. She still suffered intrusive memories and nightmares stemming from this abuse that led to diminished concentration and outbursts of anger. Her intrusive memories occasionally caused Vann great distress. (Tr. 598). Vann also presented with a depressed mood and slowed activity. She was tearful and depressed, albeit with normal cognition. (Tr. 602). Todd assessed Vann with a GAF score of 55, with moderate impairment in activities of daily living, employment, financial matters, social groups, and support. (Tr. 598, 606).

After this initial visit, Vann met with Todd an additional 14 times through December of 2013, the month of her hearing before the ALJ. (Tr. 596-635). The

records from these frequent visits with Todd indicate fluctuating symptoms of PTSD and depression, as well as fluctuation in attempts to manage the symptoms. *Id.*

On her last visit with Todd before the hearing before the ALJ, that visit being on December 3, 2013 and the hearing before the ALJ being December 16, 2013, Todd's diagnosis of Vann remained unchanged: Dysthymic Disorder/Neurotic Depression and PTSD. (Tr. 598). Todd noted a GAF score of 53 and "considerable depressive symptoms." *Id.* Regarding the PTSD, Todd noted Vann had "made progress on managing the symptoms of PTSD, but this should be on-going." *Id.*

The treatment notes of Todd are the entirety of medical evidence regarding Vann's depression and PTSD. There is no agency opinion of mental functioning in the record. No agency doctors gave an opinion on Vann's depression or PTSD. (Tr. 112-114). Although, the agency noted that they required a consultative examination to assess Vann's depression, inexplicably, no such consultative exam was ever done. (Tr. 110). Indeed, neither the agency nor the ALJ ordered a psychological consultative examination. There is no evidence that any medical source from the agency considered Todd's reports or gave any opinion on Vann's ability to perform the mental functions of work.

Notwithstanding Todd's treatment notes concerning Vann's mental impairments, the hearing before the ALJ almost completely ignored her mental impairments. Indeed, the only discussion or questions concerning Vann's mental impairments concerned the ALJ noting that Vann's initial application for benefits did not mention any mental impairments, and Vann noting that she began seeing her therapist sometime after January of 2013. (Tr. 48). The remainder of the hearing concerned questions regarding Vann's *physical* impairments and related impact on her functioning, with one exception. The ALJ did ask the Vocational Expert, Mr. Paprocki, the following question:

> Mr. Paprocki, if subsequent medical records reveal a severe mental impairment that would impact Ms. Vann at least occasionally during

> periods of symptom exacerbation so that she would, during these periods, have moderate limitations in concentration, persistence, or pace if attempting complex or detailed tasks and, therefore, would need to be limited to jobs that did not involve complex or detailed job processes and little in the way of change in job process from day to day, would the customer service representative position still be okay?

(Tr. 87). His answer was "no." Id. Importantly, customer service representative was past work which, without the mental limitation, the VE concluded Vann could still perform notwithstanding her severe physical impairments. (Tr. 83-87). This is the same work that the ALJ ultimately concluded Vann could perform, thereby precluding a finding of disability. (Tr. 16).

Turning to that decision, the ALJ declined to find any severe mental impairments at Step 2. (Tr. 19-20). PTSD is nowhere mentioned in her decision. Regarding depression, the ALJ noted that the "medically determinable mental impairment of depression" first appeared in January 2013, at which time Vann was prescribed Cymbalta, which was later decreased in May when her Humalog dosage was increased. (Tr. 19). The ALJ then states:

> Treatment records show generally good response to treatment and mental status evaluations do not support that this would cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

(Tr. 19). The ALJ then picks some random facts from the treatment notes of Vann's 15 visits with Todd which, apparently in the ALJ's opinion, support that conclusion. Thrown into the mix of those random facts is this statement: "However, the undersigned finds no evidence of a severe mental impairment that has lasted or is expected to last 12 months or more." (Tr. 20). No reasons for this conclusion are given by the ALJ.

Finally, the ALJ evaluated Vann's functioning in the four broad areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), known as

the "paragraph B" criteria. In the category of activities of daily living, she found no limitation; in the categories of social function and concentration, persistence or pace, she found mild limitations; and in the area of episodes of decompensation, she found that she had no such episodes. The ALJ then concluded that because Vann had no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration, Vann's mental impairments were nonsevere.

Given this conclusion, the ALJ completely omitted any mental limitations from the RFC she crafted. Indeed, after moving on from Step 2, she never again mentioned anything regarding Vann's mental impairments or treatment notes related thereto. (Tr. 23).

## III
### A

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that her inability to work is medical in nature and that she is totally disabled.

Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five- step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;
2) suffers from an impairment that is severe or whether a combination of her impairments is severe;
3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of

6

substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, the Plaintiff alleges error at Step 2. Specifically, she argues that the ALJ erred in finding that her mental impairments were not "severe." Additionally, she argues that the ALJ erred in concluding at Step 2 that Vann's mental impairments did not meet the duration requirement. Given these alleged errors, Vann argues that the RFC developed by the ALJ, as well as the testimony of the VE based upon that RFC, were not supported by substantial evidence. The Commissioner responds that the ALJ's findings at Step 2 are in fact supported by substantial evidence.

B

Step 2 is "merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015), *quoting Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citation omitted; *quoting Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). Indeed, it is a "*de minimis* screening for groundless claims." *Thomas v. Colvin*, ___ F.3d ___ (7th Cir. 2016), 2016 WL 3439015, *5, *citing Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d. Cir. 2003); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *McDonald v. Sec. of Health and Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). SSR 96-3p provides that if an individual's impairment does not appear from the objective medical evidence to be severe, then the ALJ must consider the limitations and restrictions caused by the individual's symptoms. *Id.* at 649. Critically, "[i]f these additional considerations cause 'more than minimal effect on an individual's ability to do basic work activities', the ALJ must find that the impairment(s) is severe *and proceed to the next step in the process* even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Curvin*, 778 F.3d at 649, quoting SSR 96-3p (emphasis in original). For mental impairments, "[m]oderate limitations under the B criteria are suggestive of a severe impairment and the ALJ should account for such limitations in setting [the] mental RFC." *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1091

(E.D. Wis. 2009), *citing Elkins v. Astrue*, 2009 WL 1124936, at *9-11 (S.D. Ind. Apr. 24, 2009); *Rasnake v. Astrue*, 2009 WL 1085969, at *14 (N.D. Ind. Apr. 22, 2009).

Even if an impairment is found to be "severe" at Step 2, the impairment must also meet the duration requirement set forth at 20 C.F.R. § 404.1509 before proceeding to subsequent steps. Specifically, 20 C.F.R. § 404.1520(a)(4)(ii) states that "[a]t the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement, we will find that you are not disabled." The determination as to whether an impairment is severe is a separate determination from whether the impairment meets the duration requirement. *See Brown v. Astrue*, 2012 WL 2376069, at *4 (S.D. Ind., June 22, 2012). In other words, "[a]n impairment could conceivably be considered severe but not meet the duration requirement, in which case the analysis would not proceed to step three." *Id*. Therefore, the failure of an impairment to meet the duration requirement does not inform the ALJ regarding the *severity* of the impairment; that question is independent of the duration requirement. *See McKinley v. Colvin*, 2015 WL 404565, *6 (N.D. Ind., Jan. 28, 2015).

Regarding the duration requirement set forth at 20 C.F.R. § 404.1509, that provision states, "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." An impairment meets the duration requirement if it is expected to *last* for a period of twelve months; there is no requirement that the impairment have already lasted for twelve months at the time of the decision. *See* 20 C.F.R. § 404.1509; SSR 82–52. Social Security Ruling 82–52 provides that in cases denied on the basis of insufficient duration, the ALJ "must state clearly in the denial rationale that" within 12 months of onset, there was or is expected to be sufficient restoration of function so that either "there is or will be no significant limitation of the ability to perform basic work-related function" or "that

in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [significant gainful activity], considering pertinent vocational factors." SSR 82–52; *see also Schiavone v. Astrue,* No. 3:10–CV–149, 2011 WL 4602151, at *12 (N.D. Ind. Sept. 29, 2011) ("If the ALJ denies a claim because of insufficient duration, the ALJ must state clearly that there is expected to be sufficient restoration of function within 12 months of onset.").

Finally, an error at Step 2 can nevertheless be harmless, provided the ALJ considers all of a claimant's severe and non-severe impairments when determining the RFC immediately after Step 3. *Curvin*, 778 F.3d at 649. However, if an ALJ fails to factor those severe and non-severe mental limitations into the RFC, then the error cannot be harmless. *Ramos*, 674 F. Supp. 2d at 1091.

## C

### 1

The Court concludes that the ALJ committed a number of errors at Step 2, the first of which is her total failure to even mention Vann's diagnosis of PTSD. From Vann's first visit to Todd to her last, the treatment notes indicate a diagnosis of PTSD. Indeed, on Vann's last visit to Todd before the hearing before the ALJ, Todd notes that Vann had "made progress on managing the symptoms of PTSD, but this should be on-going." (Tr. 598). The treatment notes clearly establish that Vann's PTSD was a medically determinable condition which, at a minimum should have been evaluated by the ALJ for its severity. This never happened and was error. *See e.g. Ridinger v. Astrue,* F. Supp. 2d 995, 1004 (N.D. Ill. 2008) (error for ALJ not to mention any evidence regarding all of plaintiff's ailments at Step 2).

### 2

Next, the ALJ erred at Step 2 by concluding that Vann's depression was not severe. The un-contradicted medical evidence in the record, *i.e.* Todd's treatment notes, provided ample evidence that her depression had "more than minimal effect

on [her] ability to do basic work activities." *Curvin*, 778 F.3d at 649, *quoting* SSR 96-3p (emphasis in original). As already noted, Vann saw Todd for her PTSD and depression 15 times in less than an 8 month period. Her diagnosis throughout that period remained the same.  She was treated with medication, which had various degrees of success, resulting in some medication and dosage changes during the relevant time period. Todd found moderate impairment in activities of daily living, employment, financial matters, social groups, and support. (Tr. 598, 606).

The ALJ, however, concluded that Vann's treatment records "show generally good response to treatment and mental status evaluations do not support that this would cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 19). This statement has no support in the record.  Even the ALJ notes Vann's "wildly" fluctuating GAF scores from a range of 43 at its lowest and 65 at its highest—not even the highest of which would alone adequately support a finding of minimal impairment. (Tr. 19). The ALJ also focuses primarily on a single visit of Vann to Todd in August of 2013 as evidence of her lack of impairment, to the exclusion of the treatment notes from her many other visits--many of which show less progress. An ALJ may not ignore evidence that is contrary to her own ruling. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). That is precisely what the ALJ did in this case. Although the ALJ also concluded that Vann has no more than mild restrictions in functioning, the facts she cited in support of those conclusions in no way exclude a finding of moderate limitations, as Todd concluded in her treatment notes. And therein lies the crux of the error made by the ALJ. It is baffling that not a shred of evidence beyond Todd's treatment notes was developed regarding Vann's mental impairments.  No agency medical source opinions. No consultative examinations or opinions. No mental RFC provided by *any* medical professional. Instead, the ALJ simply substituted her own medical opinion for that of the only medical evidence in the record.  That she cannot do, especially when assessing the limitations caused by a mental impairment such as

depression. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.").

### 3

A third error committed by the ALJ at Step 2 was her conclusion that Vann's mental impairments did not meet the duration requirement. First, the ALJ provided no reasons whatsoever for her conclusion. This alone is error. Second, the evidence in the record clearly supports a finding that Vann's mental impairments met the duration requirement. Remember, an impairment meets the duration requirement if it is expected to *last* for a period of twelve months; there is no requirement that the impairment have already lasted for twelve months at the time of the decision. *See* 20 C.F.R. § 404.1509; SSR 82–52.  Therefore, the fact that Vann had been seeing a therapist and had been diagnosed with depression and PTSD for less than 12 months (11 months to be precises) is only one part of the inquiry. Regarding the actual question the ALJ should have answered, *i.e.* whether the impairment was expected to *last* for a period of twelve months, the obvious answer is "yes." On Vann's last visit with Todd before the hearing before the ALJ, Todd's diagnosis of Vann remained unchanged: Dysthymic Disorder/Neurotic Depression and PTSD. (Tr. 598). Todd noted a GAF score of 53 and "considerable depressive symptoms." *Id.* Regarding the PTSD, Todd noted Vann had "made progress on managing the symptoms of PTSD, but this should be on-going." *Id.* These statements alone, made by Vann's treating LCPC 11-months after onset of her mental impairment is more than sufficient to establish that Vann's mental impairments met the duration requirement. The notion that her impairment would simply "go away" in another month, in light of Todd's treatment notes, is absurd.

### IV

A few final observations.

First, all of these errors at Step 2 ultimately stem from a fundamental misconception by the ALJ of the quantum of evidence necessary for a claimant to meet her burden at Step 2. As already noted, Step 2 is "merely a threshold requirement." *Curvin*, 778 F.3d at 648, *quoting Castile*, 617 F.3d at 926-27; *quoting Hickman*, 187 F.3d at 688. It is only a "*de minimis* screening for groundless claims." *Thomas*, 2016 WL 3439015 at *5. The ALJ erected too high of a burden for the claimant to meet at Step 2; the record evidence clearly demonstrated that Vann presented sufficient evidence to cross the threshold and that her claim of mental impairments were not *de minimis*, groundless claims. Whether or not her severe mental impairments, when considered in combination with *all* her other impairments, are disabling is not a question for Step 2; that is a question for the later Steps. Vann was entitled to a consideration of those steps which included her mental impairments.

Second, even assuming the ALJ did not err in concluding that Vann's mental impairments were not severe, she still erred at Step 4 by failing to include the mental impairments when developing the RFC. If an ALJ finds one or more of a claimant's impairments to be severe, she needs to "consider the aggregate effect of the entire constellation of ailments-including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir.2003). The ALJ must consider "the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. Even impairments that are not severe on their own must be considered because the combination of impairments may be severe. *Id.* The ALJ here *completely ignored* any mental impairments in her decision when developing the RFC. So long as there is a finding of *any* severe impairments sufficient to cross the threshold of Step 2, then the ALJ must consider both severe and non-severe impairments when developing the RFC; non-severe impairments do

not drop entirely out of consideration simply because the impairment is found not to be severe at Step 2. *See Ridinger,* 589 F. Supp. 2d at 1004.

Finally, the errors here cannot be considered harmless. Although a Step 2 error can be harmless provided the ALJ considers all of a claimant's severe and non-severe impairments when determining the RFC at Step 4, as just noted, *supra*, the ALJ made no such consideration here. *Curvin*, 778 F.3d at 649. She failed to factor the mental limitations, severe or not, into the RFC, thereby precluding a finding of harmless error. *Ramos*, 674 F. Supp. 2d at 1091. This conclusion is bolstered by the fact that in the lone hypothetical in which the ALJ asked the VE to assume some moderate mental limitations, the VE concluded that, in light of the mental limitations, Vann could not perform her past work as a customer service representative—the very past work which the ALJ relied upon to conclude that Vann was not disabled. One could not have a clearer demonstration of a harmful error than that.

## V

For the reasons stated, *supra*, the Plaintiff's Motion for Summary Judgment [#14] is GRANTED and the Defendant's Motion for Summary Affirmance is DENIED [#17], and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to, consistent with this Order and Opinion, reconsider Step 2 and the Steps which follow it. The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on July 29, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE